```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION

TIERNEY HUGHES                                        PLAINTIFF

     v.                    No. 10-CV-05090

THE WET SEAL RETAIL, INC.;
MARCUS SANCHEZ, individually                         DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Tierney Hughes brings this action against her former employer, The Wet Seal Retail, Inc. ("Wet Seal"), alleging both sexual harassment and discrimination in violation of Title VII of the Civil Rights Act and the Arkansas Civil Rights Act of 1993 and against separate Defendant Marcus Sanchez alleging a violation of the common law tort of outrage. Currently before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint and Compel Arbitration or, in the Alternative, to Stay the Proceedings Pending Arbitration. (Doc. 13)  For the reasons reflected herein, the motion is **GRANTED** to the extent that this action will be **STAYED PENDING ARBITRATION.**

## I. BACKGROUND

The only issue in contention at this point in the proceedings is whether Hughes' claim should be subject to arbitration. Defendants contend that Hughes' Complaint was filed in contravention of an enforceable agreement to arbitrate claims between Wet Seal and Hughes and between Hughes and other Wet Seal employees. Hughes argues that the parties' agreement is governed by

the Arkansas Uniform Arbitration Act ("AUAA"), which prohibits the arbitration of tort matters and employment disputes. ARK. CODE ANN. § 16-108-201(b)(2). Hughes further argues that the arbitration agreement between the parties is unconscionable and, therefore, invalid and unenforceable.

Hughes agreed to arbitrate claims between the parties when she completed and signed her Wet Seal employment application. Hughes initialed a paragraph of the application which contained the following text:

> If I am hired, in consideration for my employment by the Company, and in order to gain the benefit of a speedy, impartial and cost-effective resolution of disputes, any dispute arising out of or in any way related to my employment, or its termination, including, but not limited to . . . violation of common law or unlawful discrimination or harassment arising under any local, state, or federal law, shall be decided exclusively by final and binding arbitration, in the County where I am last employed . . . This agreement to arbitrate shall remain in full force and effect, notwithstanding any change in my position, title or any other term or condition of my employment with the Company.

(Doc. 14-2 at p. 3). Just below this paragraph, Hughes signed the application, acknowledging "I HAVE CAREFULLY READ AND AGREE TO THE ABOVE." *Id.*

On October 2, 2009, the day Hughes reported to work at Wet Seal in Rogers, Arkansas, Hughes signed a Mutual Agreement to Arbitrate ("Arbitration Agreement"). By signing the Arbitration Agreement, Hughes acknowledged the following:

> YOU AND THE COMPANY UNDERSTAND THAT, ABSENT THIS AGREEMENT, YOU AND THE COMPANY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT, BY THIS AGREEMENT, GIVE UP THAT RIGHT AND AGREE TO RESOLVE BY ARBITRATION ANY AND ALL DISPUTES OR GRIEVANCES DIRECTLY OR INDIRECTLY RELATED TO YOUR EMPLOYMENT OR THE TERMINATION THEREOF.

(Doc. 14-3 at ¶(k)). The Arbitration Agreement covers "any dispute arising out of or in any way related to [the employee's] employment with the Company, or its termination . . ." expressly including discrimination and harassment claims, tort claims, and claims for violation of state statute or public policy. *Id.* at ¶(b). Individual Defendant Marcus Sanchez likewise signed both an Employment Application and an Arbitration Agreement with Wet Seal. (Docs. 14-4, 14-5). Both Hughes' and Sanchez's Arbitration Agreements were also signed by a representative of Wet Seal, Samantha McLelland, a manager at the Rogers store. (Docs. 14-3, 14-5).

## II. DISCUSSION

### A. Validity of the Agreement

As a threshold issue, the Court must determine whether a valid arbitration agreement exists between the parties, and if so, whether the subject matter of the dispute falls within the scope of the arbitration clause. *United Steelworkers, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000). The determination of whether an enforceable agreement to arbitrate exists between the parties is based on state contract law. *The Money Place, LLC v.*

*Barnes*, 78 S.W.3d 714, 716 (Ark. 2002)(citing *Showmethemoney Check Cashers, Inc. v. Williams*, 27 S.W.3d 361 (Ark. 2000)). As Arkansas is the forum state and the alleged agreements were entered into within the state of Arkansas, Arkansas contract law controls the issue of the validity of the agreements. Under Arkansas law, "[t]he same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally" and effect will be given "to the intent of the parties as evidenced by the arbitration agreement itself." *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004)(quoting *E-Z Cash Advance, Inc. v. Harris*, 60 S.W.3d 436 (Ark. 2001)).

Hughes contends the agreements she signed with Wet Seal, both the employment application and the Arbitration Agreement, are unenforceable due to unconscionability. State-law contract defenses, such as unconscionability, may be applied to invalidate arbitration agreements. *Pleasants v. Am. Express Co.*, 541 F.3d 853, 857 (8th Cir. 2008)(citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)). In determining whether an arbitration agreement is unconscionable, Arkansas courts "review the totality of the circumstances surrounding the negotiation and execution of the contracts." *Casteel v. Clear Channel Broad., Inc.*, 254 F.Supp.2d 1081, 1089 (W.D. Ark. 2003)(quoting *State v. R & A Inv. Co.*, 985 S.W.2d 299 (Ark. 1999)). Arkansas courts consider two factors: (1) "whether there is a gross inequality of bargaining power between

the parties and [2] whether the aggrieved party was made aware of and comprehended the provision in question." *Id*. The doctrine of unconscionability has both procedural and substantive elements. "Procedural unconscionability deals with the manner in which a contract was entered into; substantive unconscionability, on the other hand, looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Gobeyn v. Travelers Indem. Co.*, 2009 LEXIS 88824 at *9 (E.D. Ark. 2009)(citing *Easter v. Compucredit Corp.*, 2009 LEXIS 16354 at *6 (W.D. Ark. 2009). The party opposing arbitration has the burden of proving the arbitration provision is unconscionable. *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 LEXIS 27668 at *32 (E.D. Ark. 2008). Hughes must prove both procedural and substantive unconsionability for an agreement to be unenforceable. *Gobeyn,* 2009 LEXIS 88824 at *9 (citing *Easter*, 2009 LEXIS 16354 at *6).

    Courts may look at various factors when determining whether an agreement is procedurally unconscionable, including whether the contract is "oppressive," which has been defined as arising from unequal bargaining power that results in an absence of meaningful choice, and the extent to which the person signing the agreement may be surprised by terms hidden in a form drafted by the party seeking to enforce its terms. *Enderlin*, 2008 LEXIS 27668 at *34 (citation omitted). Hughes entered into not one, but two, agreements to arbitrate with Wet Seal. First, Hughes entered into

an agreement to arbitrate "in consideration for [her] employment with [Wet Seal]" when she completed her employment application. (Doc. 14-2 at p. 3). Second, the Arbitration Agreement stated that execution of the Agreement served "as consideration for [her] employment and ongoing compensation by [Wet Seal]." (Doc. 14-3 at p. 1). Hughes does not contend that she lacked the capacity to contract or was otherwise incapable of reading and understanding these documents she signed. Nor has Hughes argued that she was unable to seek employment at another retail establishment had she chosen not to sign the agreements. Hughes had the option of declining to sign the employment application and Arbitration agreement. Instead, she voluntarily chose to sign both documents and to pursue and engage in employment with Wet Seal. Finally, the terms of the Arbitration Agreement were set out conspicuously in a separate agreement in which the agreement to forego the right to a jury trial and submit disputes to arbitration was set out in capitalized letters just above the signature block. (Doc. 14-3 at ¶(k)). The Court finds that the circumstances surrounding the execution of the Arbitration Agreement between the two parties was not oppressive, nor was there any reason that Hughes should now be surprised by the contents of the agreements that she signed. Thus, the Arbitration Agreement is not procedurally unconscionable.

While the failure of Hughes to show that the agreements to arbitrate were procedurally unconscionable necessarily defeats her

6

argument that the agreements are unenforceable, the Court further finds Hughes' arguments that the agreements were substantively unconscionable to be without merit. "Substantive unconscionability looks to the actual terms of the contract to see if they are one-sided." *Enderlin*, 2008 LEXIS 27668 at *38 (quoting *Davidson v. Cingular Wireless LLC*, 2007 LEXIS 21040 at *5 (E.D. Ark. 2007)). Through the Agreement both Hughes and Wet Seal mutually agree that they give up the right to a jury trial and "agree to resolve by arbitration any and all disputes or grievances directly or indirectly related to [Hughes'] employment or the termination thereof." (Doc. 14-3 at ¶(k)). Thus, the terms of the Arbitration Agreement equally bind both Hughes and Wet Seal. Hughes argues that the Arbitration Agreement must lay out a framework for filing an arbitration claim and address the safeguards and protections a party should receive should the party choose to file such a claim, but cites no legal authority to bolster this contention. The Court disagrees that such language is necessary in order for an arbitration agreement to be substantively conscionable. Furthermore, the Arbitration Agreement does provide some guidance in this regard in stating that the rules of the American Arbitration Association will be applicable to employment disputes. (Doc. 14-3 at ¶(b)). The Court does not find the terms of the agreement to be otherwise unreasonable or one-sided.

Hughes has not offered sufficient evidence to establish that

the Arbitration Agreement or the employment application are unconscionable. Therefore, the Court finds the agreements to arbitrate to be valid and enforceable. The Court also finds that the claims raised by Hughes fall within the scope of the Arbitration Agreement. The Arbitration Agreement broadly covers "any dispute arising out of or in any way related to [the employee's] employment with the Company, or its termination . . ." expressly including discrimination and harassment claims, tort claims, and claims for violation of state statute or public policy. (Doc. 14-3 at ¶(b)). Hughes' claims for sexual harassment and discrimination and for the tort of outrage clearly fall within the ambit of this clause.

**B. Applicability of the Federal Arbitration Act**

Since the Court has determined that there exists a valid and enforceable agreement to arbitrate between the parties, the Court must next determine whether the Federal Arbitration Act ("FAA") or, rather, the Arkansas Uniform Arbitration Act governs the parties' agreement. "Arbitration is strongly favored in Arkansas as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Pest Mgmt., Inc. v. Langer*, 250 S.W.3d 550, 556 (Ark. 2007)(citation omitted). The AUAA, however, prohibits the arbitration of tort matters and employment disputes. ARK. CODE ANN. § 16-108-201(b)(2). Furthermore, the Arbitration

8

Agreement between the parties states "[t]his agreement to arbitrate disputes shall not be deemed to apply if an agreement to arbitrate such a dispute is prohibited by law." (Docs. 14-3 at ¶(b), 14-5 at ¶(b)). In contrast, under the FAA "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, tort matters and employment are within the broad scope of claims that may be subject to arbitration under the FAA. The FAA declares a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

The Arbitration Agreement need not stipulate that the FAA governs. The FAA applies to all agreements evidencing a transaction "involving commerce," "even if the parties did not contemplate an interstate commerce connection." *Terminix Int'l Co., LLC v. Trivitt*, 289 S.W.3d 485, 488 (Ark. Ct. App. 2008)(quoting *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 281 (1995)). The Arkansas Supreme Court has recognized that the phrase "involving commerce" is the functional equivalent of "affecting commerce,"

which is interpreted as an expression of Congressional intent to regulate to the full extent of its commerce powers. *Arkansas Diagnostic Center, PA v. Tahiri*, 257 S.W.3d 884, 890 (Ark. 2008) (quoting *Dobson*, 513 U.S. at 274). "The Supreme Court has explicitly held that employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *Id*. at 889 (citing *Equal Emp't Opportunity Comm'n v. waffle House, Inc.*, 534 U.S. 279 (2002)).

Hughes relies in large part on the Arkansas Supreme Court's holding in *Arkansas Diagnostic Center, PA v. Tahiri*, 257 S.W.3d 884 (Ark. 2008) to advance the argument that the arbitration agreements between Hughes and Wet Seal did not sufficiently involve interstate commerce to invoke the applicability of the FAA. However, the circumstances which led the Court to its conclusion in *Tahiri* can be distinguished from the circumstances of the present case. In *Tahiri*, the Arkansas Supreme Court held that an employment agreement between a physician and his clinic employer was not governed by the FAA because the physician's employment agreement did not facilitate the clinic's interstate business activities. *Id*. at 892. The Supreme Court of Arkansas based its ruling, in part, on the fact that the employer clinic was a decidedly "local" enterprise. *Id.*

While Wet Seal offers only a citation to its website to support their claim that Wet Seal is a national retailer which

10

ships and receives goods through interstate commerce, Hughes does not dispute those assertions, referring to them instead as "inapposite." (Doc. 15-1 at 4). In her Complaint, Hughes acknowledged that Wet Seal operates a retail business throughout the United States. (Doc. 1 at ¶ 6). The Court finds that Wet Seal's status as a national retailer takes this case out of the realm of the precedent established in *Tahiri* and mandates a finding that arbitration should be compelled. The Wet Seal store in Rogers was not a "local" enterprise. It is one branch of an inherently commercial enterprise with branches throughout the United States. Hughes, as an employee of Wet Seal, was engaged in selling consumer goods for a national retailer. The facts of this case mandate application of the FAA, as they encompass activity involving commerce that Congress could undoubtedly regulate through the broadest expanse of its powers under the Commerce Clause. As the Court has determined that a valid, enforceable agreement to arbitrate exists and Hughes' claims fall within the scope of that agreement, arbitration between the parties must be compelled.

Hughes does not specifically address the applicability of the Arbitration Agreement to her tort of outrage claim against Sanchez. In any event, the Court's analysis of a separate argument concerning Sanchez would have resulted in the same conclusion – that arbitration should be compelled. The Arbitration Agreement expressly covered "disputes [the employee] may have with the

11

Company or any of its assigns, officers, directors, shareholders, *employees*, agents and/or parent, affiliate, subsidiary and successor entities." (Doc. 14-3 at ¶(f) (emphasis added)). Hughes' claim against Sanchez for the tort of outrage springs from Sanchez's conduct while he was employed by Wet Seal as Assistant Store Manager at the Rogers, Arkansas Wet Seal where Hughes worked. Hughes claim against Sanchez is, therefore, likewise subject to arbitration under the terms of the Arbitration Agreement.

### III. Conclusion

Based on the foregoing, Defendants' Motion (Doc. 13) is hereby **GRANTED** to the extent that all proceedings in this matter will be **STAYED PENDING ARBITRATION.** This action is hereby administratively terminated subject to being reopened upon the conclusion of the arbitration proceedings. The parties are directed to immediately notify the Court upon conclusion of the arbitration proceedings.

**It is so ordered this 16th day of November, 2010.**

                                                 */s/ Robert T. Dawson*
                                                 Honorable Robert T. Dawson
                                                 United States District Judge